```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

GELU TOPA,

    Plaintiff,

v.                                          Case No: 2:16-cv-00737-FTM-29CM

C.O. TEOFILO MELENDEZ
and CPL. NICHOLAS A. SHAFFER,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. #8) filed on November 15, 2016, to which Plaintiff filed a Response in Opposition (Doc. #11) on December 15, 2016. Also before the Court is Defendants' August 25, 2017 Motion for Summary Judgment (Doc. #30). Plaintiff has not filed a Response, and the time to do so has passed. For the reasons set forth below, the Court grants dismissal of Plaintiff's Complaint.

**I.**

Gelu Topa (Plaintiff) filed a *pro se* Civil Rights Complaint Form (Doc. #1) on November 28, 2016 naming as Defendants Teofilo Melendez (Officer Melendez) and Nicholas Shaffer (Officer Shaffer) (collectively, Defendants) of the Collier County Sherriff's Office. The Complaint purports to allege four causes of action

arising out of Plaintiff's October 24, 2012 arrest and subsequent conviction for violating a Temporary Restraining Order (TRO): (1) a due process claim for wrongful arrest; (2) a Fourth Amendment claim for unreasonable seizure; (3) false imprisonment; and (4) conspiracy.

As best the Court can tell from the stream-of-conscience allegations in the Complaint, the factual predicate for Plaintiff's claims seems to be as follows: Plaintiff was arrested on September 30, 2012 for a domestic disturbance, and his wife obtained a TRO against him on October 5, 2012. On October 24, 2012, Plaintiff called the Collier County Sheriff's Department and requested an appointment with Sheriff Kevin Rambosk to discuss Plaintiff's belief that his then-wife was attempting to "set [him] up with the help of a policeman," a claim for which he had "proof on a laptop." (Id. p. 5.) He also asked for police assistance with a matter relating to documents for his vehicle, which were in his wife's possession, so he would not violate the TRO. (Id.) Plaintiff alleges that the officer he spoke with agreed to send someone to help. (Id.)

About thirty minutes later, a police car pulled up in front of or near Plaintiff's home. (Id.) The occupants were a police officer (potentially Officer Shaffer) and a woman in a "nurse-like" blue outfit. (Id.) The officer was – it appears - permitted to enter Plaintiff's apartment, while the woman stayed in the car.

- 2 -

(Id.) After entering the apartment, the officer began "whispering into his mike (sic) and went to all the rooms." (Id.) Plaintiff assumed the officer was speaking to another officer tasked with collecting the forms for Plaintiff's vehicle from Plaintiff's wife, as Plaintiff had requested. (Id.) However, about thirty minutes later, a "younger officer with a different color uniform" forcefully entered the apartment and began reading Plaintiff his Miranda rights. (Id.) The officer told Plaintiff that Plaintiff had been seen in his wife's parking lot and was being arrested for violating the TRO – an accusation Plaintiff denied. (Id.)

On February 21, 2013, Plaintiff pled no contest to violating the TRO. (Doc. #30-4.) He was adjudicated guilty and sentenced to 180 days in jail, which he served, and 12 months of probation.[1] (Id.; see also Doc. #1, p. 6.)

Plaintiff now contends that Officer Melendez "masterminded" the arrest so he could remove a laptop from Plaintiff's apartment, and then convinced Plaintiff's wife and her coworker to give false statements corroborating the fabricated story that Plaintiff had been in the wife's parking lot.[2] (Doc. #1, p. 6.) Plaintiff claims he can prove to the Court that he did not violate the TRO,

---

[1] Plaintiff says he was on probation for two years. (Doc. #1, pp. 6-7.)

[2] The Complaint does not allege that Officer Melendez was at Plaintiff's apartment when Plaintiff was arrested.

and he seeks to recover $500,000 for the out-of-pocket costs and the pain and suffering that his wrongful arrest, imprisonment, and probation have caused.

Defendants have moved to dismiss this case in its entirety under Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim against Defendants – in either their individual or official capacities - for any of the causes of action alleged. Defendants' Motion for Summary Judgment raises the additional argument that Plaintiff's claims are barred under the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994).[3] As the Court will now discuss, the Court agrees that Heck and its progeny require dismissal of Plaintiff's claims.[4]

**II.**

Heck involved a Section 1983 suit brought by a prisoner seeking compensatory and punitive damages against law enforcement for "engineering" his manslaughter conviction. Heck v. Humphrey, 997 F.2d 355, 357 (7th Cir. 1993). On appeal, the United States Supreme Court held that, before a lawsuit seeking damages for

---

[3] The Motion for Summary Judgment also argues that the evidentiary record shows that – as a matter of law - Plaintiff's arrest was supported by "arguable probable cause" (Doc. #30, pp. 8-10), which "constitutes an absolute bar to both state tort and section 1983 claims for false arrest." (Id. p. 7 (citations omitted).)

[4] Because Heck bars Plaintiff's claims, the Court does not herein address whether the allegations in the Complaint are otherwise sufficient to state causes of action for wrongful arrest, false imprisonment, and conspiracy, or whether probable cause to arrest Plaintiff existed as a matter of law.

wrongful conviction or imprisonment may proceed, the plaintiff must prove that the conviction has already been reversed, expunged, invalidated, or called into question by issuance of a writ of habeas corpus.  Heck, 512 U.S. at 486-87.  Because the plaintiff's manslaughter conviction was still valid, and because his "damages claims challenged the legality of th[at] conviction" the Supreme Court affirmed dismissal of the civil lawsuit.  Id. at 490.

Where a plaintiff seeks damages for something other than an alleged wrongful conviction or imprisonment – for example, a false arrest – the court asks whether success with that claim will "*necessarily* impl[y] the invalidity of th[e] conviction" that resulted from the allegedly-false arrest, and which has not yet been invalidated.  Hughes v. Lott, 350 F.3d 1157, 1160 & n.2 (11th Cir. 2003).  To answer this question, the court "look[s] both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted."  Id. at 1160 n.2.

In sum, "[i]f a successful § 1983 suit for damages would necessarily imply the invalidity of a conviction or sentence, and that conviction or sentence has not been invalidated before the commencement of the § 1983 suit, the suit must be dismissed." Towbridge v. Tacker, 488 F. App'x 402, 403 (11th Cir. 2012) (per curiam).

**III.**

Applying the Heck rule here compels a finding that Plaintiff's lawsuit must be dismissed. As to Plaintiff's Section 1983 claims for false arrest and false imprisonment,[5] the singular basis for both is the assertion that Plaintiff never violated the TRO. (Doc. #1, p. 5.) In other words, Plaintiff "challenge[s] his role in the offense conduct that led to his arrest and convictions, the arrest itself, and his eventual conviction," as opposed to "the constitutionality of the procedure by which his arrest was carried out." Towbridge, 488 F. App'x at 404-05.

Notwithstanding Plaintiff's contention that he is innocent, the reality is that Plaintiff pled no contest to, and was subsequently convicted of and imprisoned for, violating the TRO.[6]

---

[5] In light of Plaintiff's *pro se* status, the Court briefly explains why Plaintiff's claims are deemed "Section 1983 claims," despite the absence of these words in the Complaint. Plaintiff alleges that Defendants have violated his due process rights, as well as his Fourth Amendment right to be free from unreasonable seizure. But while constitutional violations are the *source* of Plaintiff's grievance, the Constitution does not itself provide the legal "vehicle" by which to seek redress in court; rather, his right to sue for damages arises, if at all, under 42 U.S.C. § 1983 - often referred to as "Section 1983." Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008); Johnson v. City of Arcadia, 450 F. Supp. 1363, 1377 (M.D. Fla. 1978). Accordingly, the Court interprets Plaintiff's constitutional claims as Section 1983 claims. See Johnson v. City of Shelby, 135 S. Ct. 346, 347 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." (citations omitted)).

[6] A plea of no contest "constitutes a conviction under Florida law." Quinlan v. City of Pensacola, 449 F. App'x 867, 870 (11th Cir. 2011) (per curiam) (citing Fla. Stat. § 960.291(3)).

This conviction has not been overturned and remains valid in the eyes of the law. Yet Plaintiff's success on the claims for false arrest and imprisonment would necessarily imply the invalidity of that still-valid conviction. Consequently, those claims are Heck-barred and must be dismissed. Hughes, 350 F.3d at 1161; see Towbridge, 488 F. App'x at 405 (affirming dismissal of wrongful arrest claim under Heck where claim was based on plaintiff's assertion of innocence and his conviction remained valid); Quinlan, 449 Fed. App'x at 870 (agreeing that Heck warranted dismissal of claim that police lacked probable cause to execute traffic stop where plaintiff pled *nolo contendere* to resisting an officer); Hawthorne v. Sheriff of Broward Cty., 212 F. App'x 943, 947 (11th Cir. 2007) (per curiam) (Heck barred claim that police falsely stated that plaintiff committed crime for which plaintiff subsequently pled no contest and was incarcerated).

Dismissal of Plaintiff's conspiracy claim is required for the same reason. The basis for this claim appears to be the allegation that Officer Melendez coerced Plaintiff's wife and the wife's coworker into giving false written statements that they had observed Plaintiff lurking in the wife's parking lot, in violation of the TRO. In other words, the purpose of the alleged conspiracy was to facilitate Plaintiff's arrest and conviction for a crime Plaintiff supposedly did not commit. But because that conviction is still valid, Heck bars this claim too. Abella v. Rubino, 63

F.3d 1063, 1065 (11th Cir. 1995) (affirming district court's dismissal of plaintiff's claim "that the defendants unconstitutionally conspired to convict him of crimes he did not commit" where plaintiff's conviction had not been invalidated); see also Heck, 997 F.2d at 356-37 (claim that law enforcement "engineered the plaintiff's conviction for murder" could not proceed where murder conviction had not been vacated). Plaintiff's claims will be dismissed without prejudice to refile, should Plaintiff subsequently have his conviction vacated.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. #8) is **GRANTED** and Plaintiff's Complaint (Doc. #1) is **dismissed without prejudice** to refile, should Plaintiff subsequently have his conviction vacated.

2. Defendants' Dispositive Motion for Summary Judgment (Doc. #30) is **denied as moot**.

3. The Clerk shall enter judgment accordingly, terminate all pending deadlines as moot, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this 18th day of September, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties and Counsel of record